By the Court.*
Sheldoh, J.
—Before the introdnction of traveling cars of the kind upon which the alleged loss occurred, the rights, duties and liabilities of the passenger and carrier were well determined. They were the same, whether the traveler journeyed by day or by night. Upon payment of his fare he was entitled to be transported, and could not be refused, save in exceptional cases, to which it is now unnecessary to refer. The luggage which he delivered to the possession and custody of the carrier, was insured to be de~ livered on demand, while as to that which he chose and was allowed to keep with him, in fact remaining within his possession and control, he was held to reasonable care, and the carrier was liable for loss only in case of negligence in some part of the duty which devolved upon it; and as to the articles of present use, such as the overcoat in question, which he retained in his own care and keeping, the carrier was held to no responsibility, unless negligence could be imputed. This rule, as to articles last described, was authoritatively settled by the opinion of Chief Justice Nelson in Tower v. The Utica & Schenectady Railroad Company (7 Hill, 47), and has been universally recognized and acted upon by the public as a just rule of common law (Tally *355 v. Great Western Railway Company, 6 L. R. C. P., 44).
The passenger traveled by night or by day, sleeping or waking, as he chose, but he was the sole guardian of 'the property which for Ms own comfort and convenience he had elected to care for and keep upon or near his person, and was remediless as regards the carrier if it was lost or stolen.
In this case, for the fare paid to the railroad company, the same usual and ordinary means of conveyance were provided. The plaintiff was entitled to be carried with his luggage from Detroit to Buffalo in the cars provided by the railroad company, and the law defined the rights, duties, and liabilities of those contracting parties. That the railroad company licensed the defendant or any one else to place a car upon its track differing as to its accommodations, in which the plaintiff rode, in no manner relieved it from the duties and liabilities imposed by its contract for safe and secure passage. In case of loss or damage to person or property, the company was liable, for it allowed the plaintiff to elect in which car he would be carried ; but it seems to be assumed in this case that it was not liable to any greater extent than if the plaintiff rode upon the ordinary car for passage upon which the fare was paid. But, in truth, it may be said that as this car was under the control of the road through its train conductor, and was provided by the road with the expectation that it would be used by travelers, the road itself is liable to the fullest extent that can, upon any principle, be adjudged against the defendant.
However this may be, the necessity of the traveler, out of which the common-law rule originated, had been supplied by the railroad company. He was provided! for and furnished all the accommodations he paid for or' expected of the company, and it is not suggested but] what they were proper and reasonable. But the plain *356 tiff, the traveler, did not choose to avail himself of them, prefering the other accommodations provided by the defendant with the license of the railroad, and the question here is, whether upon the facts found any other duty, right, or liability obtained between these parties than those referred to as existing between the carrier and passenger. Was any greater shield thrown around the plaintiff or his property for their protection, when he entered the defendant’s car and availed himself of those extra accommodations ?
It can not, truthfully, be contended that there was any delivery of the coat into the custody of the defendant different from the delivery of it that he would have made to the railroad company had he elected to travel by the ordinary cars. He carried it with him to wear or to put off, as the exigencies of his health or the weather required. There was no place to deposit it, and he sought none, nor was it expected that one would be provided.
Upon these facts, the defendant should not be held liable. It is unnecessary to remark that the extra payment made to the defendant procured for the plaintiff many other comforts and luxuries beside that of lying down and sleeping if he chose. He obtained comparative protection for himself and his property, and immunity from disturbance during the passage. These facts afford no solution of the question. But the fact exists that the most discreet and vigilant officers of a car can not prevent depredations, and if this duty is imposed by law, it is impracticable to meet the responsibility, and the law requires nothing unreasonable or unjust of any member of society.
It is sought to charge the defendant with the responsibility of the inn-keeker, upon the assumption that the law implied a contract or imposed a liability of the same nature. That responsibility was declared by the civil law to be as strict and severe as that of common *357 carriers, and modern jurisprudence has adopted and applied the principle. But it went no farther, as is sought to be done in this case. The liability of the inn-keeper arises out of facts which do not exist in this case. He can not lawfully refuse to receive guests to the extent of his reasonable accommodations, nor can he impose unreasonable terms upon them. The necessities of the traveler required these just rules to be adopted. As a compensation for the responsibility thus incurred, he has a lien upon all the property of ' the guest at the inn for all his expenses there. There are no facts in this case justifying the application of such rules of law. The defendant could not be com -; polled to receive and entertain passengers, however! amenable it might be upon its contract with the car-! rier, and it had no lien for the price of the accommodations. The traveler voluntarily, and not of necessity?" availed himself of what was placed before him for his? comfort, and he can not cast the burden of care and/diligence upon the defendant, neither is it right or just that the law should do so. Unless the court can determine after the most mature consideration that it is required to apply some general well settled principle of the common law to a new case arising out of circumstances or emergencies developed by the progress of society, so that common justice may be subserved and enforced among the people, it should refrain from making the application.
The judgment appealed from should be reversed, with costs.
Clinton, Oh, J., concurring.
Smith, J., dissenting.
Judgment reversed. with costs.

 Present, Clinton, Ob. J"., Sheldon and Smith, JX